UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

ESCANABA AND LAKE SUPERIOR
RAILROAD COMPANY,

      Plaintiff,

v.                                                                     Case No. 2:19-CV-90

BROTHERHOOD OF MAINTENANCE                   HON. GORDON J. QUIST
OF WAY EMPLOYES DIVISION,
INTERNATIONAL BROTHERHOOD
OF TEAMSTERS,

      Defendant.

_____/

## OPINION REGARDING JURISDICTION

Plaintiff, Escanaba and Lake Superior Railroad ("E&LS"), seeks a declaratory judgment

that Defendant, Brotherhood of Maintenance of Way Employes [sic] Division, International

Brotherhood of Teamsters's ("BMWED"), claim that E&LS "wrongfully assigned work to others

is meritless because the work at issue was not work which [E&LS] had a contract to perform."

(ECF No. 1 at PageID.1.)

BMWED filed a motion to dismiss for lack of jurisdiction pursuant to Rule 12(b)(1). (ECF

No. 7.) In this motion, BMWED argues that the dispute is a "minor" dispute and, therefore, is

subject to mandatory arbitration under the Railway Labor Act (RLA), 45 U.S.C. §§ 151, *et seq.*

E&LS argues that the dispute is a "major" dispute. E&LS suggests that the Court resolve

BMWED's Rule 12(b)(1) motion by (1) converting the motion to a Rule 56 summary judgment

motion and granting E&LS summary judgment; (2) denying the Rule 12(b)(1) motion as

premature; (3) converting the motion to a Rule 12(b)(6) motion and denying it; or (4) simply denying the Rule 12(b)(1) motion.

The issue is whether this Court has jurisdiction because the dispute is a "major dispute," or, whether this Court does not have jurisdiction because the dispute is a "minor dispute" and, therefore, subject to mandatory arbitration.

## I. FACTUAL ALLEGATIONS

E&LS is a privately held railroad that operates in Northeastern Wisconsin and Michigan's Upper Peninsula. (ECF No. 1 at PageID.2.) In 1975, E&LS and BMWED entered into a collective bargaining agreement ("CBA"). (ECF No. 1 at PageID.2.) Rule 1 of the CBA[1] provides that "[e]xcept in emergency and when agreed to by General Chairman" maintenance of way work ("scope work") shall be performed by employees represented by BMWED. (ECF No. 7-3 at PageID.54.) Rule 2 of the CBA provides a procedure for contracting out scope work. (ECF No. 7-3 at PageID.55.) Rule 52 of the CBA outlines the grievance procedure for resolving disputes. (ECF No. 7-3 at PageID.56-57.) If E&LS does not respond to the grievance in writing, the grievance must be allowed, and the aggrieved employees shall be compensated. (*Id.*)

In 2016, E&LS entered into a contract with the Michigan Department of Transportation ("MDOT"), which allowed MDOT to enter E&LS's property to remove and replace a bridge structure over a railroad at the intersection of U.S. Highway 2, U.S. Highway 41, and Michigan Highway 35. (ECF No. 1 at PageID.3.) The contract allowed MDOT to contract out the construction except E&LS had the limited duty to "furnish flagmen, conductors, pilots, watchmen or other protective services or devises to promote safety and insure continuity of train operations as may be necessary in connection with the work performed." (*Id.*) Shortly thereafter, MDOT

---

[1] Rules 1, 2, and 52 of the CBA are provided in the Appendix.

hired Zenith Tech, Inc. to perform work on the MDOT project. (ECF No. 1 at PageID.4) Zenith and/or MDOT subsequently contracted out the work to Holubar. (*Id.*)

On November 20, 2017, BMWED filed Claim Number B-1701E-101 under Rule 52 of the CBA. In this claim, BMWED alleges that E&LS violated the CBA when, "commencing on or about September 22, 2017[,] and continuing[,] [E&LS] directed as many as ten (10) employees from subcontractor Holubar to perform the work of track rehabilitation and associated duties in the approximate vicinity of MP 1 and MP 1.5. Located (sic) on the Wells mainline track in Wells[,] MI." (*Id.*) BMWED further alleges that this work was scope work. (*Id.*)

According to the complaint, E&LS responded to the claim by informing BMWED that E&LS did not have the authority to assign the work at issue because the MDOT contract gave the authority to MDOT. (ECF No. 1 at PageID.4.) Despite E&LS's response, BMWED submitted the claim to the National Railroad Adjustment Board ("NRAB").

In the motion to dismiss, BMWED claims that E&LS failed to timely respond to the claim. BMWED states that it sent the claim on November 20, 2017, and that E&LS received the claim on November 22, 2017. Under the CBA, E&LS had 60 days to respond, but E&LS did not respond until February 7, 2018. Because E&LS failed to timely respond, BMWED contends that, under the CBA, "the claim or grievance shall be allowed as presented."

The claim is currently before the NRAB. As of March 22, 2019, the parties have fully briefed the issue. On April 25, 2019, E&LS filed this complaint. E&LS states that "[a] declaratory judgment pursuant to 28 U.S.C. § 2201 is necessary to determine the parties' rights under the CBA." (ECF No. 1 at PageID.6.) E&LS further states that BMWED is attempting to unilaterally expand the scope of the CBA to include work assigned by other parties. (*Id.*) E&LS claims that

it "is entitled to a declaratory judgment declaring that Claim Number B-1701E-101 is meritless." (*Id.*)

## II. STANDARD OF REVIEW

Here, the Court need not resolve any factual dispute. E&LS even concedes that "there are no material facts in dispute." (ECF No. 10 at PageID.150.) The parties agree that—(1) E&LS and BMWED are parties to a CBA; (2) Rules 1 and 2 of the CBA cover "scope work" and E&LS's ability to contract out scope work; (3) Rule 52 of the CBA provides a procedure for filing grievances; (4) E&LS entered into a contract with MDOT to replace a bridge structure on E&LS's property; (5) some of the work was not performed by BMWED represented employees; (6) BMWED sent a letter to E&LS informing them that E&LS contracted out scope work; and (7) BMWED eventually filed a claim with the NRAB.

Because the material facts are not disputed, the Court can consider the motion as a facial attack under Rule 12(b)(1) and accept all of E&LS's allegations as true. When a court accepts the plaintiff's allegations as true, it can consider documents referenced in the complaint. *See Gould Electronics Inc. v. United States*, 220 F.3d 169, 176 (3d. Cir. 2000) ("In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff."); *Weiner, D.P.M. v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997), *overruled on other grounds by Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 122 S. Ct. 992 (2002) ("[D]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the [plaintiffs'] complaint and are central to [their] claim.").

### III.    MAJOR VS. MINOR DISPUTE

The Railway Labor Act "provides mandatory procedures for resolving disagreements between railroad companies and the unions representing their employees." *CSX Transp., Inc. v. United Transp. Union*, 395 F.3d 365, 367 (6th Cir. 2005) (citing 45 U.S.C. § 151(a)).  The RLA "provides two procedural tracks: one for major disputes and one for minor disputes." *Flight Options, LLC v. Int'l Brotherhood of Teamsters, Local 1108*, 873 F.3d 540, 543-44 (6th Cir. 2017) (citing *Consol Rail Corp. v. Ry. Labor Execs.' Ass'n*, 491 U.S. 299, 302-04, 109 S. Ct. 2477, 2480-2482 (1989)).  Federal courts have jurisdiction over major disputes, but minor disputes must be submitted to arbitration. *Consol. Rail*, 491 U.S. at 303, 109 S. Ct. at 2481.

"Major disputes relate to the formation of a collective-bargaining agreement or the effort to change the terms of a collective-bargaining agreement." *Flight Options*, 873 F.3d at 544. Minor disputes "arise from disagreements about how an existing collective-bargaining agreement applies to a particular situation." *Id.*  "Stated differently, major disputes seek to create contractual rights; minor disputes seek to enforce them." *Airline Prof'ls Ass'n, Teamster Local Union 1224 v. ABX Air, Inc.*, 400 F.3d 411, 414 (6th Cir. 2005).

The party claiming that the dispute is minor, in this case BMWED, bears the burden to show the dispute involves the interpretation of the collective bargaining agreement. *Consol. Rail*, 491 U.S. at 303, 109 S. Ct. at 2481. This burden is "relatively light," and the moving party, BMWED in the instant case, must show that its action is "arguably justified" by the terms of the agreement and its interpretation is not "frivolous or obviously insubstantial." *Id.* at 307, 109 S. Ct. at 2483.

Accordingly, the question in this case is whether the BMWED was "arguably justified" in filing the grievance.  This Court concludes that BMWED meets this light standard. The collective-

bargaining agreement provides that employees represented by BMWED "shall perform all work in the Maintenance of Way and Structures Department." (ECF No. 7-2 at PageID.54.) The collective-bargaining agreement also provides that E&LS may contract out scope of work only in limited circumstances. (ECF No. 7-2 at PageID.55.) Finally, the collective-bargaining agreement provides a procedure for filing claims. (ECF No. 7-2 at PageID.56-57.) BMWED argues that E&LS contracted out scope work in violation of the terms of the collective-bargaining agreement. E&LS claims that it did not because it had no control over MDOT's work and the MDOT's allocation of workers and subcontractors. BMWED further asserts that E&LS did not timely respond to its claim in violation of the terms of the collective-bargaining agreement. E&LS disagrees.

Both of these disputes can be resolved by interpreting Rules 1, 2, and 52 of the collective-bargaining agreement. The Court does not take a position on which interpretation is correct, but BMWED's claim is arguably justified and not clearly frivolous. To paraphrase the Supreme Court's conclusion in *Consolidated Rail*, ". . . [In] no way do [I] suggest that [E&LS] is or is not entitled to prevail before the Board on the merits of the dispute." 491 U.S. at 320, 109 S. Ct. at 2489.

Dated: December 2, 2019                                    /s/ Gordon J. Quist
                                              _____
                                                          GORDON J. QUIST
                                                  UNITED STATES DISTRICT JUDGE

RULE 1. SCOPE.

The rules contained herein shall govern the hours of service and working conditions of all employes in any and all sub-departments of the Maintenance of Way and Structures Department, represented by the Brotherhood of Maintenance of Way Employes. Except in emergency and when agreed to by General Chairman, such employes shall perform all work in the Maintenance of Way and Structures Department. This agreement shall not apply to the following:

1. Roadmasters or other comparable supervisory officers and those of higher rank.

2. Clerical and civil engineering forces.

3. Employes in signal, telegraph and telephone maintenance departments.

RULE 2. CONTRACTING OUT.

In the event a carrier plans to contract out work within the scope of the applicable schedule agreement, the carrier shall notify the General Chairman of the organization involved in writing as far in advance of the date of the contracting transaction as is practicable and in any event not less than 15 days prior thereto.

If the General Chairman, or his representative, requests a meeting to discuss matters relating to the said contracting transaction, the designated representative of the carrier shall promptly meet with him for that purpose. Said carrier and organization representatives shall make a good faith attempt to reach an understanding concerning said contracting, but if no understanding is reached the carrier may nevertheless proceed with said contracting, and the organization may file and progress claims in connection therewith.

Nothing in this Rule shall affect the existing rights of either party in connection with contracting out. Its purpose is to require the carrier to give advance notice and, if requested, to meet with the General Chairman or his representative to discuss and if possible reach an understanding in connection therewith.

RULE 52. TIME LIMIT ON CLAIMS.

(a) All claims or grievance must be presented in writing by or on behalf of the employee involved, to the officer of the Carrier authorized to receive same, within sixty (60) days from the date of the occurrence on which the claim or grievance is based. Should any such claim or grievance be disallowed, the carrier shall, within sixty (60) days from the date same is filed, notify whoever filed the claim or grievance (the employee or his representative) in writing of the reasons for such disallowance. If not so notified, the claim or grievance shall be allowed as presented, but this shall not be considered as a precedent or waiver of the contentions of the Carrier as to other similar claims or grievances.

(b) If a disallowed claim or grievance is to be appealed, such appeal must be in writing and must be taken within 60 days from receipt of notice of disallowance, and the representative of the Carrier shall be notified in writing within that time of the rejection of his decision. Failing to comply with this provision, the matter shall be considered closed, but this shall not be considered as a precedent or waiver of the contentions of the employees as to other similar claims or grievances. It is understood, however, that the parties may, by agreement, at any stage of the handling of a claim or grievance on the property, extend the sixty (60) day period for either a decision or appeal, up to and including the highest officer of the Carrier designated for that purpose.

(c) The requirements outlined in paragraphs (a) and (b), pertaining to appeal by the employee and decision by the Carrier, shall govern in appeals taken to each succeeding officer, except in cases of appeal from the decision of the highest officer designated by the Carrier to handle such disputes. All claims or grievances involved in a decision by the highest designated officer shall be barred unless within nine (9) months from the date of said officer's decision, proceedings are instituted by the employee or his duly authorized representative before the appropriate division of the National Railroad Adjustment Board or a system, group or regional board of adjustment that has been agreed to by the parties hereto as provided in Section 3 Second of the Railway Labor Act. It is understood however, that the parties may be agreement in any particular case extend the nine (9) months' period herein referred to.

(d) A claim may be filed at any time for an alleged continuing violation of any agreement and all rights of the claimant or claimants involved thereby shall, under this rule, be fully protected by the filing of one claim or grievance based thereon as long as such alleged [] violation, if found to be such, continues. However, no monetary claim shall be allowed retroactively for more than 60 days prior to the filing thereof. With respect to claims and grievances involving an employee held out of service in discipline cases, the original notice of request for reinstatement with pay for lost time shall be sufficient.

(e) This rule recognizes the right of representatives of the Organization, parties hereto, to file and prosecute claims and grievances for and on behalf of the employees they represent.

(f) This agreement is not intended to deny the right of the employees to use any other lawful action for the settlement of claims or grievances provided such action is instituted within 9 months of the date of the decision of the highest designated officer of the carrier.

(g) This rule shall not apply to requests for leniency.